**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **LINDA PINTRO** ) | |
| **8302 White Star Court** ) | |
| **Springfield, VA 22153** ) | |
| ) | **Case No.:  1:17-cv-2090** |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | |
| **AJIT V. PAI, CHAIRMAN,** ) | **Jury Trial Demand** |
| **FEDERAL COMMUNICATIONS** ) | |
| **COMMISSION** ) | |
| **445 12th Street SW** ) | |
| **Washington, DC 20536** ) | |
| ) | |
| *Defendant.* ) | |
| ———————————————) | |

## COMPLAINT

Plaintiff Linda Pintro, by and through counsel, hereby files this Complaint for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, against Defendant Ajit V. Pai, in his capacity of Chairman of the Federal Communications Commission.

### Jurisdiction and Venue

1.      This court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, 42 U.S. C. § 2000e *et seq.,* and 29 U.S.C. § 633a.

2.      Plaintiff has exhausted all administrative remedies prior to filing suit.

3.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that all or some events or omissions giving rise to Plaintiff's claims occurred in this judicial district and Defendant may be found in this judicial district.

## Parties

4.      Plaintiff Linda Pintro (hereinafter "Plaintiff" or "Pintro") is an African American female of Haitian national origin.

5.      Defendant Ajit V. Pai hereafter ("Defendant," "FCC," or the "Agency") is the Chairman of the Federal Communications Commission, an administrative agency of the United States government, and an "employer" within the meaning of the statutes under which Plaintiff brings her claims, and is being sued in his official capacity.

## Factual Allegations

6.      Plaintiff is an African (Haitian) American female attorney who was employed at the FCC's International Bureau as a Senior Legal Advisor in the Strategic Analysis and Negotiations Division (SAND).

7.      Beginning in 2003, Plaintiff's supervisor was Kathryn O'Brien, Caucasian female, and Chief of SAND.

8.      Plaintiff Pintro began employment with the FCC in the Office of General Counsel (OGC), Administrative Law Division, and served as a Senior Attorney from 1996 through 1998.  She transferred to the Common Carrier Bureau in 1998, where she worked as an Assistant Division Chief from 1998 until May 1999.  In this position, she provided day to day supervision of legal and technical staff, including review and edit of staffing work. In 1999, Plaintiff transferred to the FCC's International Bureau, Strategic Analysis & Negotiations Division (SAND).  From 2003 through 2009, Plaintiff was supervised by Kathryn O'Brien (Caucasian female).  Prior to O'Brien becoming Plaintiff's supervisor, Plaintiff served as the SAND principal legal advisor to the Division, Deputy Bureau and Bureau Chiefs and was regarded as part of the management team.

9.      Beginning in 2003 and continuing through 2008, the Agency, through O'Brien, provided preferential work assignments with management designations within SAND to ten Caucasian attorneys, non-competitively, and deliberately excluded Plaintiff from these assignments and other opportunities for career advancement.

10.     O'Brien promoted Mr. Alexander Royblat, Caucasian male, to the position of Assistant Chief, SAND, effective August 24, 2003.

11.     O'Brien promoted Pam Gerr, Caucasian female, to the position of Special Counsel, effective August 24, 2003.

12.     O'Brien promoted Julie Barrie, Caucasian female, to the position of Assistant Chief, SAND.  Barrie was later promoted a second time to the position of Deputy Chief, SAND, effective October 2003.

13.     O'Brien promoted Jennifer Gilsenan, Caucasian female, to the position of Deputy Chief, SAND, effective July 16, 2004.

14.     O'Brien promoted Dante Ibarra, Hispanic male, to the position of Supervisory Electronics Engineer, SAND, effective July 22, 2007.

15.     O'Brien promoted Carrie Lee Early, Caucasian female, to the position of Chief, Multilateral Negotiations & Industry Analysis Branch, SAND, effective February 3, 2008.

16.     O'Brien promoted Chris Murphy, Caucasian male, to the position of Branch Chief, SAND, effective November 2, 2003.

17.     In February 2006, O'Brien hired Robert Tanner, Caucasian male, as a staff attorney. O'Brien promoted Tanner to the position of Acting Deputy Division Chief in March 2008.

18.     Plaintiff was very interested in and clearly better qualified than Julie Barrie, Jennifer Gilsenan, and Robert Tanner for the promotions identified in Paragraphs 12, 13,

and 17 above, but was overlooked for these opportunities in favor of less qualified Caucasian employees.

19.     In April 2007, O'Brien detailed Plaintiff to the FCC's Enforcement Bureau to review "do-not-call complaints."  This was essentially a clerical task that did not utilize Plaintiff's skills and experience as an attorney and negatively impacted her career growth. O'Brien refused Plaintiff's request to be removed from the detail.

20.     In late 2007 or early 2008, Deputy Division Chief, Linda Dubroof, Caucasian female, was granted a requested reassignment.

21.     In October 2007, Plaintiff received from O'Brien an annual performance evaluation for 2006.  O'Brien rated Plaintiff "fully successful" in three out of the four elements and "fully successful" overall.  This rating precluded Plaintiff from receiving a "time-off award" and negatively impacted her career advancement.  The evaluation also failed to consider Plaintiff's accomplishments during the relevant time period, and instead was based on arbitrary and irrelevant criteria that O'Brien, when later pressed by Plaintiff, could not justify.

22.     Plaintiff filed a complaint of discrimination in April 2008, alleging the Agency discriminated against her based on her race in denying her promotional opportunities on three separate occasions.  Plaintiff's complaint further described gross mismanagement, racial discrimination, illegal pre-selection, the use of assignments as rewards and tools of punishment, grooming of Caucasian candidates for promotion through choice details and assignments, preferred assignments taken from African Americans, and retaliatory tactics toward Plaintiff through details to positions to perform duties well below her pay grade.

23.     After Plaintiff filed her complaint of discrimination, O'Brien continued to retaliate against Plaintiff by removing her job duties, relegating her to the least favorable job assignments, and giving her few if any awards.

24.     Additionally, after filing her complaint of discrimination, O'Brien refused to provide Plaintiff with performance evaluations.  Finally, in March 2010, Plaintiff received a performance evaluation.  The performance evaluation noted that the four critical elements of Plaintiff's performance plan were not applicable, and downgraded her rating in all elements from her previous rating.

25.     Plaintiff timely filed a complaint of discrimination with the FCC alleging that she was discriminated against on the basis of race and national origin when she was denied opportunities for promotions and was precluded from assignments of work projects that would have enabled her to qualify for such promotions, when the Agency refused to promote her to the Acting Deputy Division Chief position, when she was issued negative or no performance evaluations, and when she was given few if any awards.

26.     From November 2000 through June 2016, Plaintiff's position of record was Senior Legal Advisor, GS-0905-15/10 in the International Bureau, Strategic Analysis and Negotiation Division (SAND).  After Plaintiff Pintro filed an EEO complaint, most of her core functions were removed from her, and she began to seek out details to be removed from the discriminatory environment.

27.     In July 2014, Plaintiff Pintro was detailed to the PSHSB, Cybersecurity and Communications Reliability Division (CCR), as a Senior Legal Advisor, GS-9095-15/10. To get this detail, Plaintiff Pintro sought and obtained approval from both the IB and PSHSB Chiefs.  Generally, at the FCC details do not extend beyond 120 days, and a detail

is viewed as a temporary assignment of an employee for a specific period of time with the expectation that the employee will return to his or her regular duties at the end of the detail. As a result, every four months, Plaintiff Pintro had to go through the process of getting approval to remain on detail to PSHSB.  This process included Plaintiff Pintro asking her managers their assessment of her performance on the detail  and if she was fulfilling their requirements and whether they wanted her to remain at PSHSB, and formally requesting approval from her managers, including Admiral David Simpson at PSHSB.  PSHSB was responsible for sending a request to IB for Plaintiff Pintro to continue the detail.

28.     In 2015, Plaintiff Pintro reported to Zenji Nakazawa, Division Chief, Policy and Licensing Division, and her second level supervisor was Admiral David Simpson.   In December 2015, Plaintiff Pintro met with Admiral Simpson to discuss her detail, and he agreed to a permanent lateral reassignment to PSHSB as a Senior Legal Advisor.   Admiral Simpson offered Plaintiff Pintro the opportunity to permanently work in the Policy and Licensing Division for Ms. Nakazawa, if this was acceptable to IB.  Plaintiff Pintro and Admiral Simpson agreed that going forward, her title and responsibilities would be at a minimum, Senior Legal Advisor.  Plaintiff Pintro informed Admiral Simpson that her objective was to be promoted beyond a Senior Legal Advisor but she would accept a lateral reassignment because she was confident that given a fair chance, she could earn a promotion.  Plaintiff Pintro conferred with her managers in IB, and they agreed that it would be acceptable for Plaintiff Pintro to accept a permanent lateral reassignment to PSHSB.

29.     In late 2015/early 2016, Plaintiff Pintro and her counsel participated in court ordered mediation sessions with an AUSA and counsel from the Agency's Office of

General Counsel.  At mediation, Plaintiff Pintro disclosed that she met with Admiral Simpson to discuss extending her detail, and he agreed to a permanent lateral reassignment to PSHSB as a Senior Legal Advisor.

30.     After mediation, the Agency's Office of General Counsel took efforts to interfere with and rescind the agreement Plaintiff Pintro reached with Admiral Simpson.  Thereafter, the Agency took the position that Plaintiff Pintro's detail would be extended and she would not receive a permanent lateral reassignment.  In January 2016, Plaintiff Pintro was detailed to the PSHSB, Policy and Licensing Division as a Senior Legal Advisor, GS-0905-15/10.  On February 10, 2016, Plaintiff Pintro was informed that instead of proceeding with a permanent lateral reassignment, the Agency would extend her detail.

31.     In March 2016, Plaintiff Pintro filed a retaliation complaint against the Agency and alleged that the Agency retaliated against her by denying her the permanent reassignment offered to her by Admiral Simpson.  After she filed the retaliation complaint in March 2016, Plaintiff Pintro was informed that she would be permanently laterally reassigned, and as a result, Plaintiff Pintro did not pursue her March 2016 complaint that the Agency's Office of General Counsel interfered with her permanent lateral reassignment.

32.     In June 2016, Plaintiff Pintro was permanently transferred to PSHSB, Policy and Licensing Division.  Plaintiff Pintro learned, however, after her permanent transfer without her knowledge, that she would be given the title of  Attorney Advisor, GS-0905-15/10, a demotion in title from the position of Senior Legal Advisor.  The Agency's Office of General Counsel took further actions to retaliate against Plaintiff Pintro by requiring one of Plaintiff Pintro's managers to report on her performance every two months and contacting Plaintiff Pintro's supervisor, Mr. Nakazawa; and informing him that Plaintiff

Pintro had an EEO case pending in federal court and asking him if Ms. Pintro requested to telework on the day she gave a deposition in August 2016 in her case pending in federal court.

33.     Plaintiff Pintro filed a complaint of retaliation in October 2016, and has exhausted all administrative requirements prior to filing suit.

## Count I

**Violation of Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. § 2000e *et seq.*
(Retaliation)**

34.     Plaintiff incorporates by reference paragraphs 1 through 33 as if fully stated herein.

35.     Title VII of the Civil Rights Act of 1964 states it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because the employee has complained of discrimination.

36.     At all pertinent times, the Defendant was an employer subject to provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

37.     At all pertinent times, Plaintiff was an employee entitled to protection under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

38.     In violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. § 2000e *et seq.*, Defendant knowingly and intentionally retaliated against Plaintiff for participating in litigation arising from her February 2008 complaint of discrimination when the Agency: 1) rescinded an offer of a permanent lateral reassignment to PSHPB as a Senior Legal Advisor; 2) permanently transferred Plaintiff Pintro, without her consent, to PSHSB as an Attorney Advisor; and 3) the Agency's Office of General Counsel interfered with Plaintiff

Pintro's employment opportunities and progression and impugned her reputation when it required one of Plaintiff Pintro's managers to report on her performance every two months; and contacted Plaintiff Pintro's supervisor, Mr. Nakazawa, and informed him that Plaintiff Pintro had an EEO case pending in federal court and asked him if Ms. Pintro requested to telework on the day she gave a deposition in August 2016 in her case pending in federal court.  As a result of the Agency's actions, Plaintiff Pintro's professional progression has been stymied and any opportunity for advancement at the Agency has been lost.

39.     As a result of such acts, Plaintiff has suffered damages.

### Prayer for Relief

Wherefore, Plaintiff prays as follows:

A.     Issue a declaratory judgment that Defendant's practices toward Plaintiff were violative of her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

B.     Award Plaintiff damages, including back pay and front pay and all lost benefits, and compensatory damages for emotional distress and hardship created by the Defendant's discrimination;

C.     Award payment of all fees, costs, expenses, including attorneys' fees and expert fees;

D.     Award Plaintiff such other relief as to which she may be deemed entitled.

### Jury Trial Demand

Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,


_____*/s/ David A. Branch*_____
David A. Branch #438764
Law Office of David A. Branch &
Associates, PLLC
1828 L Street NW, Suite 820
Washington, DC 20036
(202) 785-2805 phone
(202) 785-0289 fax
davidbranch@dbranchlaw.com